UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JULIE M. COLBURN,

      Plaintiff,

                           Civil No. 2:22cv114

v.

UNITED STATES OF AMERICA,

      Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant United States of America's (the "Government") motion to dismiss Plaintiff Julie M. Colburn's ("Colburn") complaint for lack of subject matter jurisdiction, and alternatively, failure to state a claim upon which relief may be granted. ECF No. 7. For the reasons stated below, the Government's Motion is **GRANTED**, and this action is hereby **DISMISSED** in its entirety.[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying this case are largely undisputed. This action arises out of a motor vehicle crash that occurred on Naval Amphibious Base Little Creek ("the Naval Base") in Virginia Beach, Virginia on September 12, 2020. At approximately 2:15 p.m., Colburn lawfully traveled onto the Naval Base after clearing an

---

[1] Because the Court's Rule 12(b)(1) subject matter jurisdiction analysis is dispositive, see infra, the Court declines to address the Government's alternative Rule 12(b)(6) argument.

entry control point at Gate 5.   Immediately after clearing the gate, Colburn began traveling northbound away from the gate.   At the same time, an unauthorized vehicle breached the entry control point at Gate 5, failing to stop when hailed by a Naval Security Force officer.   In response, gate officers deployed a final denial (HACS) barrier to prevent further access by the unauthorized vehicle.   The barrier deployed underneath Colburn's car as she passed over it, stopping her car, as well as the unauthorized vehicle.

On March 10, 2022, Colburn brought the instant action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et. seq. for alleged injuries suffered as a result of the Navy's actions.   Colburn alleges that the actions by Naval law enforcement officers were negligent, and that their deployment of the barrier constituted assault. Defendant timely filed the instant motion to dismiss for lack of subject matter jurisdiction. Plaintiff did not file a responsive brief.   Accordingly, this matter is ripe for review.

## II. STANDARD OF REVIEW

Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).   A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may attack a complaint on its face,

2

asserting that the complaint fails to allege facts upon which the court can base jurisdiction, or it may attack the truth of any underlying jurisdictional allegations contained in the complaint. Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Here, Defendant asserts a facial challenge. ECF No. 8, at 2.

When a defendant advances a facial challenge to a complaint, "the plaintiff, in effect, is afforded the same procedural protection as [s]he would receive under a Rule 12(b)(6) consideration." Adams, 697 F.2d at 1219. The court must therefore "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." Kensington Volunteer Fire Dep't, Inc. v. Montgomery County, 684 F.3d 462, 467 (4th Cir. 2012) (citation and internal quotation marks omitted). However, "[t]he burden of alleging facts sufficient to establish . . . subject-matter jurisdiction lies, of course, squarely with the plaintiff." SunTrust Bank v. Village at Fair Oaks Owner, LLC, 766 F. Supp. 2d 686, 688 (E.D. Va. 2011) (citing Pinkley, Inc. v. City of Frederick, Md., 191 F.3d 394, 399 (4th Cir. 1999)); see also Frankel v. United States, 358 F. Supp. 3d 537, 540 (E.D. Va. 2019) ("The party asserting subject matter jurisdiction bears the burden of proving that such jurisdiction exists.").

3

### III. DISCUSSION

### A. Sovereign Immunity

"Absent a statutory waiver, sovereign immunity shields the United States from a civil tort suit." Kerns v. United States, 585 F.3d 187, 193-94 (4th Cir. 2009). Enacted in 1946, the FTCA serves as a limited waiver of sovereign immunity, permitting suit against the United States for "certain torts committed by federal employees." FDIC v. Meyer, 510 U.S. 471, 475 (1994). The FTCA grants jurisdiction to district courts under specifically prescribed circumstances, and "the circumstances of [the United States'] waiver must be scrupulously observed and not expanded by the court." Kokotis v. United States Postal Service, 223 F.3d 275, 278 (4th Cir. 2000). Furthermore, any "ambiguities are resolved in favor of the sovereign." Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996).

For a federal district court to have jurisdiction over tort claims brought against the United States, the claims must be "actionable under [28 U.S.C.] § 1346(b)." Meyer, 510 U.S. at 477. Actionable claims under § 1346(b) must allege six statutory elements, which are that the claim be:

> [1] against the United States, [2] for money damages,
> ... [3] for injury or loss of property, or personal
> injury or death [4] caused by the negligent or wrongful
> act or omission of any employee of the Government [5]
> while acting within the scope of his office or
> employment, [6] under circumstances where the United
> States, if a private person, would be liable to the

4

> claimant in accordance with the law of the place where
> the act or omission occurred.

28 U.S.C. § 1346(b); Brownback v. King, 141 S. Ct. 740, 745 (2021).

"Because waivers of sovereign immunity must be strictly construed,

the plaintiff bears the burden of demonstrating jurisdiction and

showing that none of the FTCA's exceptions apply." Wood v. United

States, 845 F.3d 123, 127 (4th Cir. 2017) (internal citations

omitted). Relevant here is the "discretionary function" exception

to the FTCA.

## 1. Discretionary Function Exception

Congress has <u>not</u> waived sovereign immunity for claims "based

upon the exercise or performance or the failure to exercise or

perform a discretionary function or duty on the part of a federal

agency or an employee of the Government, whether or not the

discretion involved be abused." 28 U.S.C. § 2680(a). The purpose

of the discretionary function exception is to prevent "judicial

second-guessing" of legislative and administrative decisions

grounded in policy. United States v. Gaubert, 499 U.S. 315, 323

(1991). Consistent with this purpose, the discretionary function

exception "protects only governmental actions and decisions based

on considerations of public policy." Berkovitz by Berkovitz v.

United States, 486 U.S. 531, 537 (1988).

The Supreme Court has articulated a two-step test to determine

whether the discretionary function exception applies to challenged

Government actions.  First, the exception "covers only acts that are discretionary in nature," and "involv[e] an element of judgment or choice." Gaubert, 499 U.S. at 322.  "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." Id.; see also Lins v. United States, 847 F. App'x. 159, 163 (4th Cir. 2021); Rich v. United States, 811 F.3d 140, 144 (4th Cir. 2015).

Second, "assuming the challenged conduct involves an element of judgment," only actions "that the discretionary function exception was designed to shield" are protected. Gaubert, 499 U.S. at 322-23.  Therefore, the challenged decision must be "susceptible to public policy analysis." Id. at 325 (internal quotations omitted).  In this context, "public policy" is defined as being "grounded in the social, economic or political goals of a statute and regulations." Id. at 316.  The inquiry "must focus on the inherent, objective nature of the challenged decision," Baum v. United States, 986 F.2d 716, 721 (4th Cir. 1993), "not on the [officer's] subjective intent in exercising the discretion." Gaubert, 499 U.S. at 325.  Moreover, "when a statute, regulation, or agency guideline permits a government agent to exercise discretion, 'it must be presumed that the agent's acts are grounded

in policy when exercising that discretion.'" Suter v. United States, 441 F.3d 306, 311 (4th Cir. 2006) (quoting Gaubert, 499 U.S. at 324). Consequently, "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged [discretionary] actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 324-25.

## 2. "Gate-runner" Case Law

The Fourth Circuit has never squarely addressed whether a military official's defensive response to an unauthorized vehicle entering a military base triggers the discretionary function exception. However, in Rutherford v. United States, the Eleventh Circuit held that the discretionary function exception protected: (1) an Army base's gate guard's decision to raise a retractable steel barrier; and (2) the guard's failure to make efforts to ensure that no other vehicle would be directly affected by deployment of the barrier. 760 F. App'x. 787 (11th Cir. 2019).

In that case, plaintiff Shannon Rutherford, a civilian employee at the Army base, sued under the FTCA after she was injured trying to leave the base. As she was proceeding through the exit side of the gate, an unauthorized vehicle had entered through the other side, and instead of turning around to exit the base as directed by the gate officer, the unauthorized vehicle continued towards the base. In response, the officer deployed a

7

retractable barrier that blocked both the inbound and outbound lanes of traffic.  Notably, the officer did not take action to clear both lanes of traffic before deploying the barrier, and Rutherford was not able to stop her car before she reached the barrier.  Consequently, she crashed directly into the barrier, damaging her car, and suffering bodily injury.

After the district court entered judgment for Rutherford following a bench trial, the Eleventh Circuit reversed, finding that the officer's decision to deploy the barrier was "the type of action the discretionary function exception protects because it necessarily involved an element of judgment or choice" grounded in the public policy goal of preventing unauthorized breaches of the military base.  Id. at 792 (quoting Ochran v. United States, 117 F.3d 495, 500 (11th Cir. 1997)).  The Court further held that because the discretionary function exception applied, the United States was shielded from liability, and the district court should have dismissed the suit for lack of subject matter jurisdiction. Id.

## B. Analysis

### 1. Nature of the Conduct at Issue

In applying the discretionary function test, the Court first addresses whether there is a discretionary response plan for unauthorized vehicle breaches of Little Creek Naval Base.  The United States represents, in support of its unopposed motion, that

8

actions by the Navy Security Force are guided by the Joint Expeditionary Base Little Creek-Fort Story ("JEBLCFS") Entry Control Point ("ECP") Penetration Pre-Planned Response ("PPR"), and the Navy Tactics, Techniques, and Procedures ("NTTP") 3-07.2.1. Smith Decl., ECF No. 8-1, at 5-13. Under the ECP PPR, when there is an unauthorized breach of Gate 5, a security officer should first warn the vehicle/pedestrian using the verbal command "Stop! Stop!" to be followed by the use of a whistle. Id. If the breacher refuses to stop following the command, the officer is to activate the HACS barrier and report the incident through the proper communication channels. Id. However, the Government offers unopposed sworn testimony indicating that there is no requirement or mandate that the PPR steps be followed in any specific order. Id. at 4. Such testimony is confirmed by the express terms of the written policy, which allows for any proportional response in "exigent circumstances." Id. at 5. Because there is not a mandatory response, security officers are required to exercise judgment in determining the manner and level of force needed to stop an unauthorized breach. Id. at 4. Importantly, the use of varying degrees of force, to include deadly force, are permitted depending on the officer's assessment of the nature of the threat. Id. at 4-5.

Relatedly, the Antiterrorism NTTP 3-07.2.1 states that all security personnel "will familiarize themselves with the

9

standardized responses outlined in their respective PPRs for ECP penetration threat." Id. at 12. However, the PPRs are "minimum guidelines to commanding officers for consideration in response to specific emergencies." Id. (emphasis added). The preplanned responses provided by the guidelines are not all-inclusive, thus requiring the officer to use "critical thinking skills, training, and judgment based on the totality of the circumstances." Id.

On their face, the PPR guidelines are a Naval security policy that offer widely applicable action plans for gate officers confronted with gate-runners and other unauthorized breachers. However, as suggested by the NTTP, that does not mean that the PPRs provide a mandatory response to every possible situation that arises from an unauthorized breach. To the contrary, if a breach presents a situation that requires actions outside of those listed, or supports an immediate escalation to more aggressive action, an officer is granted wide discretion in determining how to best secure the base. The Fourth Circuit has made clear that in cases involving military security policies, defense decisions "are ones of professional military discretion," and "are due the court's highest deference." Minns v. United States, 155 F.3d 445, 451 (4th Cir. 1998).

Here, during the events leading to Colburn's asserted injury, the officers at Gate 5 made a calculated decision to deploy the HACS barrier in order to prevent further unauthorized access to

10

the Naval Base. There were a variety of ways to respond to such a threat that fell within the broad discretion of the officers, and they determined that deploying the HACS barrier was the requisite level of force needed to stop the breach. The unchallenged evidence before the Court therefore shows that the officers' actions involved at least some matter of choice. As a result, the Court finds that such actions were discretionary, in accordance with the first prong of the Gaubert standard.

### 2. Public Policy Considerations

The Court next reviews whether the actions giving rise to the instant case are of the kind that the discretionary function exception is designed to shield. Gaubert, 499 U.S. at 322-23. At issue is the Navy's decision to control access to its base through use of an HACS barrier, and whether that discretion is exercised in furtherance of public policy goals. Viewing that decision in an "objective or general sense," Baum, 986 F.2d at 720-21, and keeping in mind the context within which it was made, such decision must rest squarely within contemplated economic, social, or political policies in order to be protected by the exception. Gaubert, 499 U.S. at 323.

As discussed, when Government actions are those of professional military discretion, they are afforded "great deference." Berry v. Bean, 796 F.2d 713, 716-17 (4th Cir. 1986). Such deference stems from the constitutionally prescribed

authority that Congress and the President are given with respect to the military. The Constitution delegates to Congress plenary power to "provide and maintain a Navy," and to "make Rules for the Government and Regulation of the land and naval Forces." U.S. Const. art. I, § 8, cl. 13, 14. Additionally, the President is vested with equally broad power as Commander in Chief of the Armed Forces. See U.S. Const. art. II, § 2, cl. 1. Together, the Executive and Legislative Branches are charged with forming the United States military policy. See Goldman v. Weinberger, 475 U.S. 503, 508 (1986). These constitutional grants of power create "special factors" that leave courts ill-equipped to review the judgments of military authorities. Gilligan v. Morgan, 413 U.S. 1, 10 (1973) ("[I]t is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the . . . control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches."); see also Lebron v. Rumsfeld, 670 F.3d 540 (4th Cir. 2012).

Furthermore, deference to military decisions is especially appropriate "where matters of base command and discipline are involved." Berry, 796 F.2d at 716. The Supreme Court has recognized "the historically unquestioned power of a commanding officer summarily to exclude civilians from the area of his

12

command." Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 893 (1961). Here, the Naval Base's Commanding Officer has used this broad authority to enlist security gate officers as the first line of defense to ensure that the base is protected from a variety of threats, to include civilians and other unauthorized persons. As part of this designation, the Navy has employed the use of numerous tools, including verbal commands and whistles, deployable HACS barriers, and even firearms capable of deadly force to aid in that defense. The evidence and authoritative case law before the Court establish that these decisions are grounded in the politically entrenched policy goal of ensuring the safety and security of the Naval Base, to which the Court now accords proper deference. See Rutherford, 760 F. A'ppx. at 793; Tiffany v. United States, 931 F.2d 271, 277-78 (4th Cir. 1991); Lebron, 670 F.3d at 548-49. Consequently, the Court finds that the challenged actions are the types of policy judgments that the discretionary function exception was designed to shield.

## IV. CONCLUSION

Because Colburn has failed to meet her burden of demonstrating that none of the FTCA's waivers apply,[2] and because the Government has established that both prongs of the Gaubert test have been met, the Court finds that the discretionary function exception

---

[2] As noted above, the burden of establishing the inapplicability of the discretionary function exception lies with the plaintiff. However, Colburn has not filed an opposition to the Government's well-argued brief.

protects the Navy's actions.  Accordingly, the Government's motion to dismiss is **GRANTED,** and Colburn's suit is **DISMISSED** for lack of subject matter jurisdiction.

    **IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 26 , 2022

14